Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/26/2021 08:08 AM CDT

STATE OF NEBRASKA, APPELLEE, V.
BRYAN WARBURTON, APPELLANT.
___ N.W.2d ___

Filed October 26, 2021.    No. A-21-035.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.

2. **Constitutional Law: Search and Seizure: Police Officers and Sheriffs: Evidence: Proof.** Both the U.S. and Nebraska Constitutions guarantee an individual the right to be free from unreasonable searches and seizures. If the State shows by a preponderance of the evidence that the police would have obtained the disputed evidence by proper police investigation entirely independent of the illegal investigative conduct, then such evidence is admissible under the inevitable discovery doctrine.

3. **Probable Cause: Words and Phrases.** Probable cause means a fair probability that contraband or evidence of a crime will be found.

4. **Constitutional Law: Arrests: Search and Seizure: Probable Cause.** A valid arrest based on probable cause that a person is engaged in criminal activity is allowed by the Fourth Amendment, and if an arrest is made based upon probable cause, a full search of the person may be made incident to that arrest.

5. **Sentences: Appeal and Error.** Absent an abuse of discretion by the trial court, an appellate court will not disturb a sentence imposed within the statutory limits.

6. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or

unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

7. **Sentences.** When imposing a sentence, a sentencing judge should customarily consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. However, the sentencing court is not limited to any mathematically applied set of factors.

8. ____. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

9. **Effectiveness of Counsel: Appeal and Error.** Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law.

10. **Effectiveness of Counsel: Records: Appeal and Error.** In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.

11. **Effectiveness of Counsel: Appeal and Error.** When an ineffective assistance of counsel claim is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel.

12. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel, the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

13. **Motions for New Trial: Verdicts: Time.** A motion for new trial premised upon Neb. Rev. Stat. § 29-2101(1), (4), and (7) (Reissue 2016) must be filed within 10 days after the verdict was rendered unless such filing is unavoidably prevented.

14. ____: ____: ____. The language of Neb. Rev. Stat. § 25-2221 (Reissue 2016) clearly indicates that the day the verdict was rendered should be excluded from the calculation of the 10-day period to file a motion for new trial and that instead, the period should begin the day after the verdict was rendered.

Appeal from the District Court for Buffalo County: RYAN C. CARSON, Judge. Affirmed.

John D. Icenogle, of Bruner, Frank, Schumacher & Husak, L.L.C., and Jerad Murphy, Buffalo County Public Defender, for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

Riedmann and Arterburn, Judges.

Arterburn, Judge.

## I. INTRODUCTION

After a bench trial, Bryan Warburton was convicted by the district court for Buffalo County of possession of more than 10 grams but less than 28 grams of methamphetamine, with intent to distribute, and possession of money used or intended to be used to facilitate the manufacture, distribution, or delivery of a controlled substance. The court subsequently sentenced Warburton to a prison term of 15 to 30 years. Warburton appeals from his convictions and sentences. On appeal, he challenges the district court's failure to suppress the evidence seized during a traffic stop of his vehicle. He also alleges that the court imposed excessive sentences and that he received ineffective assistance of trial counsel. Following our review of the record, we affirm Warburton's convictions and sentences.

## II. BACKGROUND

On March 2, 2020, the State filed an information charging Warburton with possession of more than 10 grams but less than 28 grams of methamphetamine, with intent to distribute, in violation of Neb. Rev. Stat. § 28-416(1) (Cum. Supp. 2020), a Class ID felony, and with possession of money used or intended to be used to facilitate the manufacture, distribution, or delivery of a controlled substance, in violation of § 28-416(17), a Class IV felony. Both of the charges against Warburton stem from a traffic stop of his vehicle which occurred on the afternoon of January 29, 2020.

At approximately 1 p.m. on January 29, 2020, Pat McLaughlin, an officer with the Kearney Police Department,

was on duty and driving a marked police cruiser when he heard a call over his radio regarding a shoplifting that had just occurred at a discount store near his location. The call indicated that a female shoplifter had run out of the store and "got into a blue Buick LeSabre type vehicle" with a male driver. The vehicle had fled from the store's parking lot. From his location, McLaughlin observed traffic until he observed a "greenish four-door vehicle drive by." The vehicle was being driven by a male, and McLaughlin could see "some blond hair in the passenger seat." McLaughlin began following the vehicle until he confirmed that its license plate matched the license plate of the vehicle involved in the shoplifting incident.

McLaughlin activated his police cruiser's emergency lights and attempted to initiate a traffic stop of the vehicle. However, the vehicle continued for "at least four or five blocks" before pulling to the side of the road. During the time that McLaughlin was attempting to stop the vehicle, he observed both the driver and the passenger to be moving around inside of the vehicle. Specifically, McLaughlin observed the driver to be "shifting" in his seat. McLaughlin was unable to see the driver's hands on the steering wheel. The female passenger was bent over, moving something around on the floorboard of the vehicle.

Once the vehicle pulled over, McLaughlin approached the passenger side of the vehicle with his gun drawn due to the "suspicious" movements of the occupants. As McLaughlin spoke with the passenger, who readily admitted to having shoplifted items from the store, a second Kearney police officer, Jason Garrels, arrived at the scene and approached the driver of the vehicle, who was identified as Warburton.

Garrels asked Warburton to step out of the vehicle. Once Warburton was outside of the vehicle, Garrels placed him in handcuffs and began to pat him down to determine if he had any weapons on his person. Garrels explained that such a weapons search was his "regular course of practice" prior to placing a person in his police cruiser or prior to conducting a further investigation. In particular, Garrels believed that a weapons

search was necessary because of Warburton's involvement in the shoplifting incident and because he had failed to immediately pull over after McLaughlin initiated a traffic stop.

Garrels observed that Warburton's shirt "wasn't sitting right." After patting down the area, Garrels felt an item under Warburton's shirt which he believed to be a plastic baggie, tucked inside his waistband. After he lifted Warburton's shirt, a baggie was visible. Garrels asked Warburton, "What do you got in here?" as Garrels pulled out a baggie. Warburton indicated that the baggie contained methamphetamine. Garrels' observation of the baggie revealed it to be mostly empty with some possible drug residue. Garrels then asked Warburton if he had anything else on his person as Garrels continued to pat him down. Warburton indicated that he had more methamphetamine inside of his underwear, hidden under his genitalia. McLaughlin retrieved that methamphetamine, which was subsequently determined to weigh almost 15 grams. Shortly thereafter, Garrels conducted a search of Warburton's person, the passenger's purse, and the interior of the vehicle. Additional methamphetamine was located on the driver's seat of the vehicle. A combined total of approximately $1,500 in cash was also recovered. Warburton was arrested for possession of a controlled substance and transported to jail.

Prior to trial, Warburton filed a motion to suppress all of the evidence obtained during the January 29, 2020, traffic stop. In his motion, Warburton alleged that the evidence was discovered as a result of an unlawful search and seizure, in violation of his rights under the 4th and 14th Amendments to the U.S. Constitution. The motion also requested that Warburton's statements to Garrels during the pat-down search should be suppressed. At the suppression hearing, Warburton's counsel also argued that these statements were elicited as a result of a custodial interrogation of Warburton that took place prior to his being informed of his *Miranda* rights. No mention of a *Miranda* violation was mentioned in the motion itself, however. The motion sought suppression of the statements

based only on Warburton's contention that the search was illegal due to a lack of reasonable suspicion.

A hearing was held on Warburton's motion in June 2020. At the hearing, McLaughlin and Garrels testified in detail about their interactions with Warburton during the January traffic stop. Ultimately, the district court overruled Warburton's motion to suppress. In its order, the court rejected both the Fourth Amendment issue raised in Warburton's motion and the *Miranda* issue raised during the hearing.

In October 2020, a bench trial was held. Prior to the presentation of evidence, Warburton renewed his motion to suppress. The district court again overruled the motion.

At the trial, McLaughlin and Garrels testified as detailed above. In addition to his testimony about the discovery of methamphetamine on Warburton's person and in his vehicle, Garrels, who had recently been promoted to the position of drug investigator within the Kearney Police Department, testified regarding his familiarity with methamphetamine "quantities and weights." Garrels explained that typically, a user of methamphetamine would consume .1 to .2 of a gram of methamphetamine in order to achieve a "high." Garrels indicated that he had spoken with some individuals who had admitted to using up to 3.5 grams of methamphetamine during a week. This amount of methamphetamine is also referred to as "an eightball." Distributors, or dealers, of methamphetamine typically possess methamphetamine in "eightball quantities." Garrels testified that he and McLaughlin retrieved multiple "eightball[s]" of methamphetamine from Warburton. Based upon his training and experience, Garrels opined that the 14.99 grams of methamphetamine seized from Warburton is consistent with a quantity for use in distribution of methamphetamine. Garrels indicated that 14.99 grams of methamphetamine is "far in excess of [a] user quantity of methamphetamine."

Garrels also provided further testimony about the cash found on Warburton's person and in his vehicle. Garrels described the cash as "not neatly organized. It appeared that he had just

received different denominations and stuck it in his pocket." Garrels believed, based upon his training and experience, that the cash seized from Warburton was handled in a manner consistent with drug transactions. Garrels further testified to his belief that Warburton had obtained the cash from individuals who had purchased methamphetamine from him.

At trial, both McLaughlin and Garrels testified as to statements made by Warburton after he was read his *Miranda* rights. Warburton admitted that the methamphetamine found was his. He told the officers that he was in possession of "a couple of eightballs" and that he had been a user of methamphetamine for 35 years. Warburton explained that he had attempted to hide the methamphetamine in his underwear after McLaughlin initiated the traffic stop of his vehicle. Warburton indicated that he had been laid off 1 month prior to January 29, 2020, and that the money he had on his person and in his vehicle was his savings.

The State also called Sgt. Glenn Kemp from the Adams County sheriff's office to testify. Kemp is a drug investigator and a member of a drug task force. In January 2020, Kemp was investigating Warburton after receiving multiple reports of "come-and-go traffic late at night [and] early in the morning" at his rural residence. Kemp indicated that such traffic patterns were not typical of Warburton's rural residence, and as a result, Kemp suspected that Warburton was selling drugs. After Warburton was arrested on January 29, Kemp obtained a search warrant for his residence, which he executed on January 31. During the search, Kemp located a large amount of small baggies, a digital electronic scale with drug residue, and a lockbox with drug paraphernalia inside. He testified that all of these items were commonly utilized in drug distribution operations.

Ultimately, the district court found Warburton guilty of possession of more than 10 grams but less than 28 grams of methamphetamine with intent to distribute and possession of money used or intended to be used to facilitate the manufacture,

distribution, or delivery of a controlled substance. The court subsequently sentenced Warburton to 15 to 30 years' imprisonment on the first count and 2 to 2 years' imprisonment on the second. The sentences were ordered to be served concurrent with each other.

Warburton appeals his convictions and sentences here.

### III. ASSIGNMENTS OF ERROR

On appeal, Warburton asserts that the district court erred in overruling his motion to suppress evidence seized as a result of the traffic stop and as a result of statements he made prior to being read his *Miranda* rights. He also asserts that the district court imposed excessive sentences and that he received ineffective assistance of trial counsel when counsel failed to timely file a motion for new trial.

### IV. ANALYSIS

#### 1. MOTION TO SUPPRESS

On appeal, Warburton challenges the district court's decision to overrule his motion to suppress. He asserts that Garrels unlawfully "expanded" his search for weapons on Warburton's person by also searching for controlled substances. Brief for appellant at 14. In addition, Warburton asserts that when Garrels asked him what was in the baggie in his waistband and if he had anything else on his person, such questioning constituted a custodial interrogation which occurred prior to Warburton's being advised of his *Miranda* rights. Warburton alleges that as a result of the unlawful search and questioning, the methamphetamine found in the course of the traffic stop should have been suppressed.

In its brief to this court, the State argues that law enforcement officers acted lawfully in searching Warburton during the traffic stop. However, the State also asserts that the methamphetamine found on Warburton's person would have been inevitably discovered after a lawful search of his vehicle revealed the presence of methamphetamine on the driver's

seat. Upon our review, we agree with the State's assertion that the methamphetamine on Warburton's person would have been inevitably discovered even if he had not been initially patted down for weapons or questioned regarding what was on his person. As such, we need not decide the validity of the search or questioning challenged by Warburton.

### (a) Additional Background

After McLaughlin stopped Warburton's vehicle, both Warburton and his female passenger were asked to step outside of the vehicle. The passenger readily admitted to shoplifting from the store. And, as we described above, a large amount of methamphetamine was found on Warburton's person after he was patted down. As a result of both the passenger's admission to shoplifting and the presence of methamphetamine on Warburton, Garrels ultimately undertook a search of the vehicle. Garrels' search of the vehicle was recorded on his body camera. It is apparent from the body-camera footage that Garrels' initial search of the vehicle was focused on recovering the items that had been shoplifted. Garrels initially focused his search of the vehicle on the passenger side. He searched the passenger-side floorboard, the seat, a compartment on the inside of the door, and the center console. However, while searching the passenger seat, he saw a substance that appeared to be methamphetamine in plain view on the driver's seat. The video confirms his observation. Garrels did not immediately collect the methamphetamine, but he did inform the other officers on the scene of its presence. Eventually, Garrels continued his search of the vehicle on the driver's side and instructed another officer to collect the methamphetamine located on the driver's seat.

Before Warburton was transported to jail, he agreed to have McLaughlin move his vehicle to a nearby residential road, rather than have the vehicle towed. Before McLaughlin got in the vehicle to move it, Garrels again reminded him to first collect the methamphetamine on the driver's seat. McLaughlin

testified that the methamphetamine on the seat included "two rocks and [some] powder." He collected the "rocks" and then wiped the residue from the seat before driving the vehicle.

### (b) Standard of Review

[1] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *State v. Nunez*, 299 Neb. 340, 907 N.W.2d 913 (2018).

### (c) Analysis

In his brief on appeal, Warburton details why he believes the search of his person and the questions asked of him by Garrels during that search were unlawful. However, Warburton does not challenge the search of his vehicle. Instead, he merely asserts that "[h]ad the officers not found the narcotics discovered on [Warburton's] person, they would not have requested to move [his] vehicle and would not have found the narcotics inside the vehicle." Brief for appellant at 14. We disagree with Warburton's claim that law enforcement officers discovered the methamphetamine on the driver's seat of the vehicle only because of the search of Warburton's person. Instead, we find that the officers at the scene of the traffic stop had probable cause to search Warburton's vehicle after his passenger admitted to shoplifting. Because the search of the vehicle was lawful and the methamphetamine was found in plain sight on the seat where Warburton was sitting, we find that the methamphetamine found on Warburton's person would have been inevitably discovered. As such, we need not decide whether the search of Warburton's person or the questions asked of him during that search were lawful.

[2] Both the U.S. and Nebraska Constitutions guarantee an individual the right to be free from unreasonable searches and seizures. See, U.S. Const. amend. IV; Neb. Const. art. I, § 7. But if the State shows by a preponderance of the evidence that the police would have obtained the disputed evidence by proper police investigation entirely independent of any illegal investigative conduct, then such evidence is admissible under the inevitable discovery doctrine. See *State v. Ball*, 271 Neb. 140, 710 N.W.2d 592 (2006). To overcome its burden, the State must demonstrate that some lawful means of discovery would have produced the evidence in question; that is, such evidence inevitably would have been discovered without any police misconduct. *Id*.

[3] At the suppression hearing, the State presented evidence which demonstrated that apart from finding methamphetamine on Warburton's person after removing him from the vehicle, officers had probable cause to search his vehicle. Probable cause means a fair probability that contraband or evidence of a crime will be found. *State v. Sanders*, 15 Neb. App. 554, 733 N.W.2d 197 (2007). Here, officers had probable cause to search Warburton's vehicle. The license plate of the vehicle matched the license plate of the vehicle involved in a shoplifting at the store. When police contacted Warburton's passenger, she readily admitted to the theft. In addition, the passenger was observed moving around in the vehicle while McLaughlin was attempting to initiate a traffic stop. Such movement included bending down over the floorboard of the vehicle, presumably to conceal the stolen items. Given these facts, officers had probable cause to search the vehicle for evidence of Warburton's passenger's theft.

[4] Once officers searched the vehicle and observed the methamphetamine on the driver's seat, where Warburton had just been sitting, and given the amount of methamphetamine found, they had probable cause to arrest Warburton for possession of a controlled substance. We further note that after Warburton was read his *Miranda* rights, he acknowledged

that all of the methamphetamine in the vehicle was his. Incident to Warburton's arrest, officers could then have lawfully searched Warburton's person. See *State v. Perry*, 292 Neb. 708, 874 N.W.2d 36 (2016) (valid arrest based on probable cause that person is engaged in criminal activity is allowed by Fourth Amendment, and if arrest is made based upon probable cause, full search of person may be made incident to that arrest). At that time, they would have discovered the additional methamphetamine in Warburton's waistband and in his underwear.

Because law enforcement would have inevitably discovered the methamphetamine on Warburton's person after they executed a valid search of his vehicle, we need not decide the propriety of Garrels' initial search of Warburton for weapons, nor of the questions asked of Warburton during this initial search. We affirm the decision of the district court to overrule Warburton's motion to suppress.

## 2. EXCESSIVE SENTENCE

Warburton alleges that the district court imposed excessive sentences when it sentenced him to a total of 15 to 30 years' imprisonment. Specifically, he asserts that when imposing the sentences, the district court failed to consider such mitigating factors as his advanced age, his obvious addiction to methamphetamine, and his complete cooperation with law enforcement during the January 29, 2020, traffic stop. Upon our review, we find no abuse of discretion in the district court's sentencing determinations.

### (a) Additional Background

After finding Warburton guilty of the charged crimes, the court ordered him to participate in a presentence investigation. The presentence investigation report revealed that Warburton was 55 years old at the time of sentencing. He had obtained his diploma through the GED program after having dropped out of high school in the 11th grade. While Warburton reported he had recently been employed doing asphalt work,

he was unemployed by the time of his presentence interview. Warburton has never been married, but was in a yearlong relationship with the 25-year-old woman in the vehicle with him during the January 29, 2020, traffic stop. He had a son who died in a car accident at the age of 17.

Warburton has a lengthy criminal history dating back to 1984. Most significantly, in 1998, he was convicted in federal court of conspiracy to distribute a controlled substance. He was sentenced to 9 years 7 months' imprisonment followed by 5 years of supervised release. After beginning his term of supervised release in 2006, he violated the terms of his release and was ultimately sent back to prison for an additional 45 months. He was finally released from federal prison in May 2015. Warburton's other convictions include possession of a controlled substance with intent to deliver, trespassing (three times), criminal mischief, disturbing the peace (two times), and driving under the influence (three times). Warburton also has a pending case stemming from the search warrant executed at his home in Adams County in January 2020.

Warburton admitted to being a longtime user of methamphetamine. He indicated that he had used methamphetamine regularly since 1984. He estimated he used between 1 and 2 grams of the drug per day. He indicated a desire to stop using methamphetamine, but he also failed to complete a substance abuse evaluation despite being provided with a voucher. Warburton also admitted to previously using marijuana, cocaine, LSD, and alcohol. Warburton denied that he had been involved in selling methamphetamine at the time of his arrest. However, he did admit to selling methamphetamine in the past.

During the presentence interview, Warburton declined to take any responsibility for his actions. Instead, he indicated that he was "'railroaded'" by law enforcement during the traffic stop. His overall score of 33 on the "Level of Service/Case Management Inventory" placed him in the "very high risk" range for reoffense.

At the sentencing hearing, Warburton's counsel argued in favor of a minimal prison sentence, citing Warburton's cooperation with police during the traffic stop and his obvious addiction to methamphetamine. Counsel stated, "I think he would most benefit from . . . services that will directly be related to his addiction. And that can generally be done through postrelease process, rather than in the facility . . . ." Contrary to defense counsel, the State argued in favor of a lengthy prison sentence in order to prohibit Warburton from continuing to provide dangerous controlled substances to other people in the community.

Prior to imposing its sentences, the district court explicitly indicated that it had thoroughly reviewed the presentence investigation report and had considered such factors as Warburton's age, his mentality, his significant criminal history, his background, and the circumstances of the current offenses. The district court noted that it was clear that Warburton was addicted to methamphetamine and had incurred struggles as a result of that addiction. However, the court also noted the large amount of methamphetamine found on Warburton and indicated its belief that this was not a "user amount[]." The court then sentenced Warburton to 15 to 30 years' imprisonment on his conviction for possession of more than 10 but less than 28 grams of methamphetamine with intent to distribute and to 2 to 2 years' imprisonment for possession of money used or intended to be used to facilitate the manufacture, distribution, or delivery of a controlled substance. The sentences were ordered to be served concurrent with each other.

### (b) Standard of Review

[5,6] Absent an abuse of discretion by the trial court, an appellate court will not disturb a sentence imposed within the statutory limits. *State v. Senteney*, 307 Neb. 702, 950 N.W.2d 585 (2020). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

(c) Analysis

[7,8] When imposing a sentence, a sentencing judge should customarily consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017). However, the sentencing court is not limited to any mathematically applied set of factors. *Id*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

In asserting that his sentences are excessive, Warburton does not and cannot dispute that his sentences were within the pertinent statutory limits. As charged by the State, possession with intent to distribute not less than 10 grams but not more than 28 grams of methamphetamine is a Class ID felony. See § 28-416(1) and (10)(c). A Class ID is punishable by a mandatory minimum 3 years' imprisonment and a maximum of 50 years' imprisonment. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2020). The district court's sentence of 15 to 30 years' imprisonment is clearly within the statutory limits. Similarly, the district court's sentence of 2 to 2 years' imprisonment for Warburton's conviction of possession of money used or intended to be used to facilitate the manufacture, distribution, or delivery of a controlled substance is also within the statutory limits. Possession of money used or intended to be used to facilitate the manufacture, distribution, or delivery of a controlled substance is a Class IV felony. See § 28-416(17). A Class IV felony is punishable by a maximum of 2 years' imprisonment and 12 months' post-release supervision. § 28-105. However in this case, imposition of post-release supervision is inapplicable, since the sentence was imposed in conjunction with a sentence for a Class ID felony.

Rather than challenging whether his sentences are within the statutory limits, Warburton alleges that the district court failed to explicitly consider such mitigating factors as his advanced age, his addiction to methamphetamine, his level of cooperation with law enforcement during the traffic stop, and the lack of violence involved in his offenses.

At the sentencing hearing in this case, the district court indicated that it had reviewed the presentence investigation report and had considered all of the pertinent factors, including Warburton's age, his addiction, and the circumstances surrounding his offense. Such statement by the court directly refutes Warburton's claim on direct appeal that the court failed to consider these mitigating factors. The district court found that the seriousness of Warburton's offenses, coupled with his criminal history, which included a lengthy federal prison sentence for a similar charge, warranted a significant period of imprisonment. Given our review of the record in this case, we find no abuse of discretion by the district court in its sentencing determination.

### 3. Ineffective Assistance of Trial Counsel

In his brief on appeal, Warburton assigns as error that he was "denied effective assistance of trial counsel by counsel's failure to file a timely motion for new trial." In the argument section of his brief, Warburton asserts that he was prejudiced by counsel's failure to timely file the motion for new trial because the verdict of the district court "was not sustained by sufficient evidence" when the State failed to prove beyond a reasonable doubt that Warburton possessed methamphetamine with the intent to distribute it. Brief for appellant at 15. Warburton contends that the evidence presented merely demonstrated his possession of the controlled substance for his own use. He asserts that had counsel filed a timely motion for new trial, the district court would have changed its previously rendered verdict. Warburton's assertion of ineffective assistance of counsel is without merit, because counsel did, in fact, timely file a motion for new trial.

### (a) Additional Background

The district court found Warburton guilty of the charged offenses immediately following the presentation of evidence at the bench trial on October 28, 2020. On November 9, Warburton, through his trial counsel, filed a motion for new trial. In the motion, he alleged that a new trial was warranted pursuant to Neb. Rev. Stat. § 29-2101(1), (4), and (7) (Reissue 2016). These subsections of § 29-2101 provide that a new trial may be granted due to irregularity in the court proceedings which resulted in an unfair trial, the verdict not being sustained by sufficient evidence, and error of law occurring at the trial, respectively.

Prior to a hearing being held on the motion for new trial, the State filed a motion to quash. The State's motion alleged that the court should quash the motion for new trial because it had been filed more than 10 days after the verdict was rendered and was, as a result, not timely filed. On the day of the hearing on the motion for new trial, Warburton's trial counsel filed a motion to withdraw the motion for new trial. Warburton's sentencing hearing proceeded approximately 1 month later.

When Warburton appeared at the sentencing hearing, he appeared with new counsel. His new counsel offered into evidence Warburton's affidavit, in which Warburton stated that he had hired new counsel because his previous counsel had withdrawn the motion for new trial without his consent.

On appeal, Warburton is represented by the same counsel who represented him at his sentencing hearing. Warburton asserts that his original trial counsel provided ineffective assistance when counsel failed to file a timely motion for new trial.

### (b) Standard of Review

[9-11] Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Clausen*, 307 Neb. 968, 951 N.W.2d 764 (2020). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient

to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.* When the claim is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Sundquist*, 301 Neb. 1006, 921 N.W.2d 131 (2019).

### (c) Analysis

[12] To prevail on a claim of ineffective assistance of counsel, the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. See, *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Anderson*, 305 Neb. 978, 943 N.W.2d 690 (2020). The record on direct appeal is sufficient to review a claim of ineffective assistance of trial counsel if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.*

To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

Warburton asserts that trial counsel provided ineffective assistance by failing to file a timely motion for new trial. However, upon our review, we conclude that the motion for new trial filed by Warburton's trial counsel was timely filed and that as a result, Warburton cannot demonstrate deficient performance.

[13] Warburton's motion for new trial was premised upon § 29-2101(1), (4), and (7). A motion for new trial premised upon these subsections must be filed within 10 days after the verdict was rendered unless such filing is unavoidably prevented. Neb. Rev. Stat. § 29-2103 (Reissue 2016). Neb. Rev. Stat. § 25-2221 (Reissue 2020) details how to calculate the 10-day period:

> Except as may be otherwise more specifically provided, the period of time within which an act is to be done in any action or proceeding shall be computed by excluding the day of the act, event, or default after which the designated period of time begins to run. The last day of the period so computed shall be included unless it is a Saturday, a Sunday, or a day during which the offices of courts of record may be legally closed as provided in this section, in which event the period shall run until the end of the next day on which the office will be open.

Here, the district court rendered its guilty verdicts on October 28, 2020. Pursuant to the language of § 25-2221, the 10-day period for filing a motion for new trial began to run on October 29 and ended on November 7. However, November 7 was a Saturday, so, pursuant to § 25-2221, the period to file the motion for new trial was extended through Monday, November 9. The motion for new trial was timely filed on November 9.

[14] We note that in the State's motion to quash the motion for new trial, it incorrectly calculated the 10-day period to file the motion for new trial. The State based its calculation on its erroneous belief that the day the verdict was rendered must be included in the 10-day period. The language of § 25-2221 clearly indicates that the day the verdict was rendered should be excluded from the calculation and that instead, the period should begin the day after the verdict was rendered.

Because trial counsel timely filed the motion for new trial, Warburton cannot show deficient performance in this regard. In his brief on appeal, Warburton does not allege or argue that his counsel was also ineffective in withdrawing the motion for

new trial without his consent. In addition, he does not assign as error that the evidence was insufficient to support his convictions. As such, we do not address these issues further.

## V. CONCLUSION

The district court did not err in overruling Warburton's motion to suppress or in sentencing him to 15 to 30 years' imprisonment. In addition, Warburton was not denied effective assistance of trial counsel because contrary to his assertion, counsel did, in fact, timely file a motion for new trial after the district court rendered its verdict.

AFFIRMED.

BISHOP, Judge, participating on briefs.