Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/29/2021 09:08 AM CST

State of Nebraska, appellee, v.
Larry B. Senteney, appellant.

___ N.W.2d ___

Filed November 6, 2020.    No. S-19-690.

1. **Appeal and Error.** An appellate court may find plain error on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. Generally, an appellate court will find plain error only when a miscarriage of justice would otherwise occur.

2. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

3. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

4. **Sentences: Appeal and Error.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.

5. **Sentences.** In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.

6. ____. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

7. **Sentences: Probation and Parole: Appeal and Error.** Whether probation or incarceration is ordered is a choice within the discretion of the trial court, whose judgment denying probation will be upheld in the absence of an abuse of discretion.

Appeal from the District Court for Scotts Bluff County: Andrea D. Miller, Judge. Affirmed.

Harry A. Moore, Scotts Bluff County Public Defender, for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Miller-Lerman, J.

## NATURE OF CASE

Larry B. Senteney appeals his convictions and sentences in the district court for Scotts Bluff County for two counts of third degree sexual assault of a child, one count of attempted incest, and one count of attempted first degree sexual assault. Senteney claims on appeal that the court committed plain error when it allowed an investigator to testify regarding indicators of deception exhibited by Senteney in an interview. He also claims that the court imposed excessive sentences when it sentenced him to imprisonment rather than probation. We affirm Senteney's convictions and sentences.

## STATEMENT OF FACTS

In late 2017, a social services agency reported to law enforcement agencies in Scottsbluff, Nebraska, that a 19-year-old woman, A.B., had disclosed that when she was 14 years old, she had been sexually abused multiple times by her grandfather, Senteney. A.B. reported that the incidents occurred in and around Scottsbluff, as well as Gering, Nebraska, and Guernsey, Wyoming, where Senteney lived at the time of the report. Investigators interviewed A.B. regarding the incidents,

and it was determined that the Scotts Bluff County sheriff's office would take the lead in further investigation. An investigator contacted Senteney by telephone, and Senteney said that he would be in Nebraska in July 2018 and would contact the sheriff's office at that time.

On July 25, 2018, because Senteney had not yet contacted the sheriff's office, Investigator Robert Hackett and another investigator drove to Wyoming to contact Senteney at his residence. Hackett and his partner contacted Senteney shortly before noon and interviewed him at his front door regarding A.B.'s allegations. Hackett noted that Senteney "appeared to be very nervous and acted strangely," that he would only talk to the investigators through the storm door, and that several times he walked away. Senteney denied having had any "'improper or perverted'" contact with A.B., but toward the end of the interview, he stated that A.B. would not lie and that if she said something had happened, she likely believed it had happened. Senteney asked the investigators to tell A.B. that he was sorry and that he asked her to forgive him.

Hackett interviewed A.B. on July 27, 2018, and she detailed three incidents of sexual contact by Senteney that occurred in Scotts Bluff County and three other incidents that occurred in Wyoming. Hackett thereafter obtained a warrant for Senteney's arrest on charges of third degree sexual assault of a child. Law enforcement officers arrested Senteney in Wyoming, and he was transported to Nebraska. In the operative information, Senteney was charged with two counts of third degree sexual assault of a child, one count of attempted incest with a person under 18 years of age, and one count of attempted first degree sexual assault.

A.B. testified at trial, and she generally testified regarding the incidents that formed the basis for the charges against Senteney. She testified that when she was around 13 or 14 years old, Senteney began to frequently talk to her about sexual matters and her body, would hug her in a manner that was "gropey," and tried to kiss her on the mouth. A.B.

testified regarding two specific incidents that occurred when Senteney was living in Gering. The first incident occurred in Senteney's residence in Gering when A.B. was "between 14 and 15" years old and they were watching a movie. A.B. was lying on the couch when Senteney pulled up her shirt, pulled down her bra, and put his mouth on her breasts. He also touched her breasts with his hands. The second incident occurred when the two were at a movie theater in Scottsbluff. Senteney "kept rubbing his hand up and down" her inner thighs throughout "[a]bout half of the movie off and on."

A.B. also testified regarding incidents that had occurred after Senteney moved to Wyoming. A.B. would visit Senteney's residence in Wyoming, and he would often pick her up from and return her to her home in Gering. After one of these visits, when A.B. was "about 15, almost 16," Senteney was driving her back to Gering. On a road near the Scotts Bluff National Monument, Senteney "pulled over on the side of the road" and asked A.B. "if [she] wanted to do anything there." Based on "the way he was acting and the way he was moving towards" her, A.B. interpreted Senteney's question as a "sexual innuendo." She told him "[N]o," and he drove her home.

A.B. testified regarding two incidents that occurred in Senteney's residence in Wyoming. The first incident occurred when A.B. was 16 years old and Senteney groped her breasts. The second incident occurred a few months later when A.B. was still 16 years old. Senteney told A.B. he wanted to draw some tattoos on her legs; she allowed him to do so, and as he was drawing on her thigh, he moved the marker and his hand up her shorts and "ended up penetrating [her] slightly with the marker." Senteney then unbuttoned his overalls and took A.B.'s hand and placed it on his penis. A.B. pulled her hand away and told him to stop. While driving A.B. back home, Senteney told A.B. "he couldn't wait until [she] turned 18."

Prior to trial, the State had filed notice of its intent to offer evidence from witnesses regarding other instances of uncharged sexual assaults under Neb. Rev. Stat. § 27-414

(Reissue 2016). This evidence included A.B.'s testimony regarding the incidents that had occurred in Wyoming, as well as testimony by other women who asserted that they had been sexually assaulted by Senteney. A preliminary hearing was held prior to trial for the purpose of informing Senteney of the evidence the State intended to offer, but the court delayed ruling on admissibility until the trial, when it would hear the offered testimony outside the presence of the jury. A.B.'s testimony regarding the incidents that occurred in Wyoming was ruled admissible under this process. The court also allowed testimony by two women regarding incidents the court found to be sufficiently similar to the incidents involving A.B. The first witness was M.F., who testified that she was Senteney's stepdaughter and that when she was 10 or 11 years old, he put his hand inside her shorts and fondled her vagina while she was sitting on his lap. The second witness was T.C., who testified that she was a friend of M.F.'s and that when she was 11 years old and stayed overnight with M.F. in Senteney's house, Senteney had, inter alia, pinned her on the couch and groped her breasts and vaginal area. The court heard testimony outside the presence of the jury from one other woman, but the court ruled her testimony inadmissible because the situation she described was too dissimilar.

The State also called Hackett as a witness. Hackett generally testified regarding his employment by the Scotts Bluff County sheriff's office and his investigation of A.B.'s allegations against Senteney. Hackett testified, inter alia, regarding his and his partner's July 25, 2018, interview of Senteney at Senteney's residence in Wyoming. As part of Hackett's testimony, the court received into evidence a recording made from Hackett's body camera showing the interview of Senteney. After providing foundation through Hackett and having the recording received into evidence, the State questioned Hackett regarding his training with regard to conducting interviews. Hackett testified that he was trained that when conducting interviews, one should pay attention not only to what the

person was saying but also to factors such as body language and tone of voice, because those factors could be indicators of deception. He testified that one would look for whether the person was being cooperative and for actions that would indicate deception, including avoiding eye contact, "go[ing] into retreat positions," and actions he described as "tension relievers," such as "big body movements, stretching, covering the mouth, [and] crossing the arms."

The State then published the recording of Hackett's interview of Senteney to the jury. Afterward, the State questioned Hackett regarding various aspects of what the recording showed, including questions regarding specific examples of indicators of deception that Senteney displayed during the interview. Hackett referenced his prior testimony regarding "retreat positions" and noted that Senteney "walked away several times retreating, generally when there was a tough question that was asked." He clarified that by "tough" questions he meant "[q]uestions pertaining to the sexual assault of [A.B.]" Hackett referred to a portion of the interview in which Senteney stated that he drew tattoos on A.B.'s feet, rather than on her thighs as she had reported. Hackett testified that this was a form of "retreating" and "want[ing] to get as far away from whatever it is . . . as they can." Hackett also noted that "when you're talking about specifically [A.B.], that's where there's big body movements, big pain, walking away, [and] crouching down," and that "if you go into something that he's comfortable talking about, . . . his voice changed [and] was more relaxed, there's no moaning, no large body movements." Hackett also testified that when an interviewee is "comfortable talking about [an event], they'll remember a lot of details." Hackett noted that Senteney gave "minimal detail" regarding specific incidents with A.B. but that he provided "a lot of detail [regarding] something that [Hackett] thought [Senteney] was comfortable talking about." Hackett also testified on redirect examination that he "felt that [Senteney] was being deceptive in some admissions that were given." Senteney did not

object to any of Hackett's testimony set forth above regarding indicators of deception.

After Hackett's testimony, the State rested its case. Senteney testified in his defense and, inter alia, denied the allegations of sexual assault raised by A.B. and the other women. Senteney presented testimony by a character witness and then rested his defense.

Among the instructions the court gave to the jury was a general instruction that the jurors were the sole judges of the credibility of witnesses and the weight to be given to their testimony. The court gave no limiting instruction, and Senteney requested no limiting instruction regarding Hackett's testimony about indicators of deception displayed by Senteney in the July 25, 2018, interview. The jury found Senteney guilty on the four counts charged. The court thereafter sentenced Senteney to imprisonment for 3 to 5 years for each of the four convictions and ordered the sentences to be served consecutively.

Senteney appeals his convictions and sentences.

## ASSIGNMENTS OF ERROR

Senteney claims that the district court committed plain error when it allowed Hackett to testify regarding indicators of deception shown by Senteney in the July 25, 2018, interview. He also claims that the court imposed excessive sentences when it sentenced him to imprisonment rather than probation.

## STANDARDS OF REVIEW

[1] An appellate court may find plain error on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *State v. Price*, 306 Neb. 38, 944 N.W.2d 279 (2020). Generally, we will find plain error only when a miscarriage of justice would otherwise occur. *Id*.

[2,3] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by

the trial court. *Id.* An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## ANALYSIS

*Testimony Regarding Indicators of*
*Deception Was Not Plain Error.*

Senteney first claims that the district court committed plain error when it allowed Hackett to testify regarding indicators of deception shown by Senteney in the July 25, 2018, interview. Senteney acknowledges that he did not object to the testimony that he now contends should not have been allowed. Regardless of whether an objection to the testimony if timely made should have been sustained, we do not find plain error as urged by Senteney.

Senteney contends that Hackett's testimony at trial concerning indicators of deception that Senteney showed during the interview was improper. Senteney cites cases in which we have said that the credibility of witnesses is a determination within the province of the trier of fact and that therefore, under our rules of evidence, "'it is totally improper for one witness to testify as to the credibility of another witness.'" *State v. Rocha*, 295 Neb. 716, 733, 890 N.W.2d 178, 195 (2017) (quoting *State v. Beermann*, 231 Neb. 380, 436 N.W.2d 499 (1989)). Despite this general rule, we concluded in *Rocha* that it was not an abuse of discretion for the trial court to admit, for the purpose of providing context to the defendant's statements, a recorded interview between an interrogating officer and the defendant in which the defendant denied possessing illegal drugs and the officer said the defendant was not being truthful. Senteney argues that the present case is different from *Rocha* because "Hackett's statements on video are not at issue" and instead "[i]t is [Hackett's] testimony in court" that is at issue. Brief for appellant at 30. Senteney acknowledges that his trial counsel failed to object to Hackett's testimony,

but he asks that plain error be noticed because he claims the testimony prejudicially affected his right to a fair trial.

The State in its brief "acknowledges that portions of Hackett's testimony" violated the rule set forth in *Rocha* to the effect that it is improper for a witness to testify whether another person may or may not have been telling the truth in a specific instance. Brief for appellee at 13. Nevertheless, the State asserts that the presentation of such testimony did not constitute plain error. The State initially notes that portions of the challenged testimony were admissible because Hackett "could have testified to his observations of Senteney during the interview without running afoul of" the rule in *Rocha*. Brief for appellee at 13. The State acknowledges, however, that Hackett's testimony went a "step too far" when he "tied those observations to being possible 'indicators of deception' and then opined that he felt that Senteney was being deceptive in certain of his statements." *Id.* Next, the State notes that "the jury had the opportunity to weigh Senteney's credibility for itself because he testified at trial." *Id.* And finally, referring to the testimony of A.B. and the other alleged victims, the State asserts that other, properly admitted evidence "effectively attacked Senteney's credibility and demonstrated his guilt." *Id.* at 14.

We agree with the State that any error in the presentation of Hackett's testimony with respect to signs of deception did not rise to the level of plain error. As Senteney concedes, he did not object to any of the testimony he now asserts was improper. Without an objection by Senteney, the court was not asked to rule on the admissibility of Hackett's testimony or the portion thereof, and therefore, it cannot be said that the court made an erroneous ruling. Our review on appeal is not to speculate whether such an objection, if made, should have been sustained. Instead, we review for plain error. Compare, *Yount v. State*, 872 S.W.2d 706 (Tex. Crim. App. 1993) (considering expert opinion on signs of deception of complainant and citing John E.B. Meyers et al., *Expert Testimony in Child*

*Sexual Abuse Litigation*, 68 Neb. L. Rev. 1 (1989)); *Cortes-Puga v. State*, No. 03-17-00713-CR, 2019 WL 3680135 (Tex. App. Aug. 7, 2019) (unpublished opinion) (concluding admission of detective's testimony regarding defendant's signs of deception was harmless error).

We have said that generally, we will find plain error only when a miscarriage of justice would otherwise occur. *State v. Price*, 306 Neb. 38, 944 N.W.2d 279 (2020). Error must be plainly evident from the record, and it must be such that it prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. See *id*.

In this case, Senteney claims that the court erred when it "allowed" testimony that violated the rules of evidence. As a general matter, during a trial a court is not obligated to rule sua sponte on the admissibility of testimony, and therefore without an objection it is difficult to say a court committed plain error when it allowed specific testimony. See *State v. Pointer*, 224 Neb. 892, 894, 402 N.W.2d 268, 270 (1987) ("[w]ithout an objection by defendant at trial, the trial court has no obligation to interject itself into the proceedings to make rulings not requested. Such actions might well trample on defendant's trial tactics not known to the court"). See, also, *State v. Herrera*, 289 Neb. 575, 856 N.W.2d 310 (2014). Even when a question or answer is arguably improper, for strategic reasons the nonproponent may choose not to raise an objection because to do so would unduly emphasize the question or answer and cause the jury to speculate as to the answer to a challenged question or to consider an answer despite being instructed to ignore it. *State v. Pointer, supra.* We are not inclined to readily find plain error in testimony to which the opposing party did not object.

With the foregoing principles in mind, we do not find that Hackett's testimony constitutes a miscarriage of justice or that leaving it uncorrected would result in damage to the integrity, reputation, and fairness of the judicial process. We note that

Hackett's testimony regarding indicators of deception and his observations during the July 25, 2018, interview was a relatively small part of Hackett's testimony and that the prosecutor did not emphasize that testimony during closing arguments. Instead, the prosecutor emphasized to the jury during closing arguments that it was the sole judge of witness credibility, and the court similarly instructed the jury that it was the sole judge of witness credibility.

Considering the challenged testimony in the context of the entire trial, we do not find that the testimony constituted a miscarriage of justice or that leaving it uncorrected would result in damage to the integrity, reputation, and fairness of the judicial process. We conclude that regardless of whether the court would have or should have sustained an objection to the testimony if such objection had been made, it was not plain error for the court to allow the testimony in this case.

In connection with his claim of plain error, although he did not assign it as error, Senteney also argues that his trial counsel provided ineffective assistance when counsel failed to object to Hackett's testimony. We note that although the attorney who represented Senteney in this direct appeal was not the same attorney who represented him at trial, both attorneys worked for the Scotts Bluff County public defender's office. We have said that when a defendant was "represented by the public defender's office at trial and on direct appeal, he is not procedurally barred from asserting a claim of ineffective assistance of counsel in his motion for postconviction relief." *State v. Davlin*, 265 Neb. 386, 391, 658 N.W.2d 1, 6 (2003). We do not consider Senteney's argument that his trial counsel provided ineffective assistance.

*Sentences of Imprisonment Were*
*Not an Abuse of Discretion.*

Senteney claims that the court imposed excessive sentences when it sentenced him to imprisonment rather than probation. We find that the sentences were within statutory limits and that the court did not abuse its discretion.

[4-7] Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Price*, 306 Neb. 38, 944 N.W.2d 279 (2020). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*. Whether probation or incarceration is ordered is a choice within the discretion of the trial court, whose judgment denying probation will be upheld in the absence of an abuse of discretion. *State v. Cerritos-Valdez*, 295 Neb. 563, 889 N.W.2d 605 (2017).

Senteney was convicted of two counts of third degree sexual assault of a child, one count of attempted incest, and one count of attempted first degree sexual assault. The convictions were based on incidents that occurred between 2011 and 2014. At that time, third degree sexual assault of a child was a Class IIIA felony under Neb. Rev. Stat. § 28-320.01 (Reissue 2008), attempted incest was a Class IIIA felony under Neb. Rev. Stat. § 28-201(4)(c) (Cum. Supp. 2014) and Neb. Rev. Stat. § 28-703 (Reissue 2008), and attempted first degree sexual assault was a Class III felony under § 28-201(4)(b) and Neb. Rev. Stat. § 28-319 (Reissue 2008). At that time, under Neb. Rev. Stat. § 28-105 (Cum. Supp. 2014), the sentencing range for a Class III felony was imprisonment for a minimum of 1 year and a maximum of 25 years and the sentencing range for a Class IIIA felony was imprisonment for a maximum of

5 years with no minimum. The court sentenced Senteney to imprisonment for 3 to 5 years for each of the four convictions and ordered the sentences to be served consecutively to one another. Therefore, the sentences were within statutory limits, and we review the sentences for an abuse of discretion.

Senteney argues that his sentences were excessive and asserts that "he should have been given probation by the court, instead of a lengthy prison term, because he is innocent of the charges for which he was convicted, he has only two speeding tickets in the past, and he is 68 years old." Brief for appellant at 31. He also asserts the sentences are longer than necessary to address his rehabilitative needs.

At the sentencing, the court stated that it had considered each of the relevant factors set forth above and the court specifically acknowledged Senteney's age and his "relatively nonexistent prior [criminal] record." However, the court also noted that the record indicated that Senteney had not taken responsibility or shown remorse, and the court cited specific examples from the presentence report. This assessment by the court is consistent with the fact that on appeal, despite a jury's having found him guilty, Senteney argues his sentences were excessive because he is innocent of the charges.

With respect to the appropriate sentences, the court also specifically addressed the possibility of probation and noted that Senteney had "rebuke[d]" the option of probation because he said he would accept probation but on the condition that the probation officer "treated him respectfully" and was not "a power-hungry probation officer." The court determined that such comments indicated that probation was not an option in this case. The court also discussed relevant factors such as the nature of the offenses and the risk Senteney posed to society generally and to family members specifically.

Having reviewed the court's comments at sentencing, we determine that the court did not consider improper factors and instead considered and based its sentencing on sufficient relevant factors. We therefore find no abuse of discretion in

the sentences imposed by the court and specifically in the decision to impose sentences of imprisonment rather than probation. We reject Senteney's claim of excessive sentences.

## CONCLUSION

We conclude that the district court did not commit plain error when it allowed Hackett's testimony. We also conclude that the sentences were not an abuse of discretion. We therefore affirm Senteney's convictions and sentences.

Affirmed.