IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. NEAL

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

BARRY NEAL, APPELLANT.

Filed October 3, 2023.    No. A-23-026.

Appeal from the District Court for Scotts Bluff County: LEO P. DOBROVOLNY, Judge. Affirmed.

Jessica R. Meyers, Chief Deputy Scotts Bluff County Public Defender, for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.

BISHOP, ARTERBURN, and WELCH, Judges.

ARTERBURN, Judge.

## I. INTRODUCTION

Following a bench trial, Barry Neal was convicted by the district court for Scotts Bluff County of second degree forgery, over $5,000; abuse of a vulnerable or senior adult; and attempted theft, over $5,000. The court subsequently sentenced Neal to an aggregate sentence of 36 to 60 months in prison with credit of 193 days spent in custody. On appeal, Neal alleges that the evidence at trial was insufficient to support a finding of guilt on all three counts. He also alleges that the sentences imposed were excessive. Upon our review of the record, we affirm.

## II. BACKGROUND

On May 20, 2021, the State filed an information charging Neal with four separate counts: one count of second degree forgery, a Class IIA felony, pursuant to Neb. Rev. Stat. § 28-603 (Reissue 2016); two counts of abuse of a vulnerable or senior adult, each a Class IIIA felony,

- 1 -

pursuant to Neb. Rev. Stat. § 28-386 (Reissue 2016); and one count of attempted theft over $5,000, a Class IIIA felony, pursuant to Neb. Rev. Stat. § 28-511(2) (Reissue 2016) and Neb. Rev. Stat. § 28-201 (Reissue 2016). On June 10, 2022, the State filed an amended information dismissing one count of abuse of a vulnerable or senior adult but leaving the remaining charges unchanged.

Each of the charges stem from a forgery investigation concerning Neal's aunt, Joyce K. Nelson, and real property described as 180018 Page Drive located in Scotts Bluff County, Nebraska. Evidence adduced at trial revealed that, on February 19, 2017, Joyce's father, William J. Nelson, passed away. Joyce was initially designated as the personal representative of the estate in the subsequent probate proceeding. However, Joyce quickly resigned from her position, and Neal was appointed in her stead. Attorney William Peters was retained to provide legal services with respect to the probate of William's estate. Peters testified at trial that Joyce was entitled to the entire estate. In addition, Peters prepared a power of attorney form for Joyce in which she nominated Neal as her agent. The form was executed on November 1, 2018. Peters testified that Joyce was unfamiliar with legal documents and wanted Neal, acting as her agent, to handle those documents for her.

Around August or September 2019, Nebraska State Patrol Investigator Rob Jackson was contacted by the Scotts Bluff County Attorney's Office to investigate whether Joyce was a vulnerable adult who had been taken advantage of by Neal. Jackson discovered that Joyce's father had passed away, and that Neal had been authorized to act on her behalf pursuant to the power of attorney form executed by Joyce the following year. Jackson subpoenaed William's estate records from Western State Bank and discovered that, among other withdrawals, $85,000 had been withdrawn on November 7, 2017. Criminal charges were filed against Neal based on these withdrawals, and in August 2020, pursuant to a plea of no contest, he was found guilty of one count of attempted abuse of a vulnerable adult and was sentenced to 1 year in jail.

At some point prior to November 2017, Neal purchased the Page Drive property from Chris Hayden on a rent-to-own basis. Before assuming full ownership rights, Neal returned the property to Hayden, citing issues with the home. Hayden testified at trial that when Neal vacated the property, he left the home in disarray. The cupboards were trashed, the wood flooring was damaged, walls were torn out, and a toilet was smashed. Additionally, a refrigerator, two gas stoves, and ceiling fans were removed from the home. Hayden repaired the home and put the property up for sale again.

On November 14, 2017, Hayden sold the Page Drive property to Joyce via quitclaim deed for $85,000. Hayden was unaware that Neal was involved in the sale and testified that if he had been aware, he would not have sold the property to Joyce. Joyce believed that she was doing Neal and his wife, Londa, a favor by being designated as grantee of the sale. She was unaware that the $85,000 used to purchase the house was coming from the estate account rather than from Neal. Attorney Kent Hadenfeldt represented Hayden in the 2017 sale. Hadenfeldt met with Joyce to sign sale papers, and Joyce was accompanied by Neal. Although Joyce was the sole grantee, Neal signed the closing statement and the real estate transfer statement. Hadenfeldt kept copies of the documents signed at the meeting, but contrary to his usual practice, he did not file the documents. Instead, he gave Joyce the documents to file and record.

When asked to review the recorded documents at trial, Hadenfeldt recognized the forms, but also noted that alterations had occurred after the documents were originally executed. In

addition to recording stamps, he testified that the line stating the document would be returned to him was scratched out, and that the body of the deed contained multiple additions. He noted an illegible scribble on the first line, and on the second line where it conveys the property to Joyce, two names were added by hand, one of which was Neal. He could not read the second name. Hadenfeldt also reviewed the recorded real estate transfer statement and identified differences from the one he prepared. Most notably, in the grantee section, two names were added by hand: Neal and Londa. Hadenfeldt denied writing either of those names on the document.

On October 19, 2018, a quitclaim deed was executed conveying the property from Joyce, Neal, and Londa as grantors, to Joyce, Neal, and Londa as joint tenants. On April 4, 2021, another quitclaim deed was executed purporting to convey the Page Drive property from Joyce and Neal, as grantors, to Londa, as the sole grantee, for $0. The 2021 deed was filed with the Register of Deeds on April 6, 2021. The property was placed on the market shortly thereafter. Joyce testified that a friend informed her the property was for sale, and she went to the courthouse to make sure that she would get her portion of the sale money. Courthouse staff informed Joyce that her name had been taken off the deed.

An investigator with the County Attorney's Office contacted Scotts Bluff County Sheriff's Office Investigator Robert Hackett, advising him that the 2021 quitclaim deed was possibly forged. Hackett contacted Joyce to inquire about the Page Drive property, and Joyce reported that she had not signed any documents releasing her interest in the property. Joyce also told Hackett she had not spoken to Neal or Londa in over a year. After speaking with Joyce, Hackett contacted Sherry Preston, the notary for the 2021 quitclaim deed. At trial, Preston testified that Neal and Londa appeared before her on April 5, 2021, and she notarized their signatures on the 2021 quitclaim deed. She further testified that Joyce was not present during this appointment, she did not notarize Joyce's signature, or perform any notary work for Joyce, and that someone else wrote Joyce's information on the deed.

As a part of his investigation, Hackett also contacted Alesia Kaufman, an employee at the Register of Deeds for Scotts Bluff County. Kaufman was working on April 6, 2021, and is the person who received and filed the 2021 quitclaim deed for the Page Drive property. She testified that Neal submitted the deed for filing. Kaufman further testified that approximately 1 month before Neal filed the 2021 deed, Londa came into the Register of Deeds Office and inquired about how to prepare a document that removes someone's name from real property.

Hackett also contacted Andy Mendoza, the real estate agent involved in the attempted sale of the Page Drive property. Mendoza was contacted by several people interested in purchasing the property. Hoping to show the property to potential buyers, Mendoza went to the property and met Neal and Londa, who provided him with a document stating that Londa owned the property. Mendoza listed the property for the couple, found a buyer, and on April 28, 2021, drew up a "residential purchase agreement" and other necessary documents for sale of the Page Drive property to a buyer. However, the sale was cancelled after Londa told Mendoza that if she sold the property, she was at risk of incarceration.

Finally, Hackett reviewed surveillance video from April 6, 2021, the date the 2021 quitclaim deed was filed with the Register of Deeds. The video came from the County Administration Building, and the camera points near the west entrance of the Register of Deeds

Office. While reviewing the video, Hackett observed Neal walk into the Register of Deeds Office around 12:20 p.m., 18 minutes before the deed was filed.

At the time of trial, Joyce was 72 years old. She testified that in 2017, she did not understand that estate funds were used to purchase the Page Drive property. Rather, Neal and Londa simply told her that they would be buying the property using her name. They told Joyce they needed to use her name because they may have had a problem contracting with Hayden. To Joyce's understanding, Neal and Londa were putting up the money to purchase the property. Joyce reviewed the 2017 quitclaim deed conveying the property from Hayden to Joyce and confirmed that her signature was on the deed. Joyce testified that she did not write Neal or Londa's names onto the 2017 deed and did not recall any conversation about listing their names as additional owners of the property. In addition, Joyce testified that her signature was on the 2018 quitclaim deed, but she did not recall signing it, as Neal, Londa, and Peters had her signing lots of documents that they told her related to her father's estate. She stated that Neal and Londa told her that the 2018 quitclaim deed was for the probate of her father's will and the property.

Joyce also reviewed the 2021 quitclaim deed purporting to convey the Page Drive property to Londa for $0. Joyce denied that the signature on the deed was hers. She explained that the signature on the deed was not in her handwriting, and it misspelled her first name. Additionally, her printed name on page 4 of the deed omitted her middle initial, "K.," which she always includes when she signs legal documents.

Neal did not testify at trial, nor did he offer any evidence besides a certified copy of his prior conviction of attempted abuse of a vulnerable adult. The prior conviction was offered to bolster Neal's double jeopardy argument that he had already been convicted of certain financial crimes involving Joyce. The State responded that the current charges related only to the 2021 quitclaim deed, and that the previous case was only referenced to show the flow of money and the overall scheme to steal from Joyce. During closing argument, Neal's counsel referenced Neal and Londa's legal separation agreement, approved and ordered by the district court of Scotts Bluff County, requiring Neal to transfer his interest in the Page Drive property to Londa. The State had introduced the agreement as an exhibit during trial. Neal's counsel argued he abided by the agreement and transferred his interest accordingly, and that the rest of the evidence pointed to crimes committed by Londa, not Neal.

Ultimately, the district court found Neal guilty of second degree forgery, over $5,000, abuse of a vulnerable or senior adult, and attempted theft, over $5,000. The court subsequently sentenced Neal to 36 to 60 months with credit for 193 days served on the forgery count, 0 to 36 months on the abuse of a vulnerable adult count, and 0 to 36 months on the attempted theft count. The sentences were ordered to be served concurrently with each other.

Neal appeals his convictions and sentences here.

## III. ASSIGNMENTS OF ERROR

On appeal, Neal asserts that the evidence at trial was insufficient to support the court's decision finding him guilty of second degree forgery, over $5,000, abuse of a vulnerable or senior adult, and attempted theft, over $5,000. He also asserts that the district court imposed excessive sentences.

## IV. STANDARD OF REVIEW

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Stack*, 307 Neb. 773, 950 N.W.2d 611 (2020). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

If the sentence imposed is within the statutory limits, an appellate court will not disturb said sentence absent an abuse of discretion by the trial court. *State v. Senteney*, 307 Neb. 702, 950 N.W.2d 585 (2020). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## V. ANALYSIS

### 1. SUFFICIENCY OF EVIDENCE

In his brief on appeal, Neal challenges the sufficiency of the evidence to support his three convictions. Regarding second degree forgery, he alleges that the State failed to demonstrate that he uttered the quitclaim deed with the intent to deceive or harm Joyce. With regard to abuse of a vulnerable or senior adult, Neal asserts that the State failed to show that he knowingly or intentionally exploited Joyce. Finally, regarding his conviction for attempted theft, Neal argues the State has not demonstrated that he had the intent to deceive or deprive Joyce of property. Additionally, he asserts that Joyce attempted to disinherit herself, and therefore, there was no attempt to steal property from her. We address each argument in turn.

### (a) Second Degree Forgery

Neal was charged with second degree forgery pursuant to § 28-603, which provides, "[w]hoever, with intent to deceive or harm, falsely . . . utters any written instrument which is or purports to be . . . a written instrument which does or may . . . otherwise affect a legal right, interest, obligation, or status, commits forgery in the second degree." The definition of the term "written instrument" is broad and encompasses quitclaim deeds. See Neb. Rev. Stat. § 28-601(1) (Reissue 2016). A forged instrument is a written instrument which has been falsely made, completed, endorsed, or altered. § 28-601(7). Section 28-601(9) provides that "[u]tter shall mean to issue, authenticate, transfer, sell, transmit, present, use, pass, or deliver, or to attempt or cause such uttering." Finally, to sustain a conviction for forgery, it is not sufficient for the State to show that the signature is not that of the party whose name is used, but it must also affirmatively be shown that the signing was made without his or her authority. *State v. Castor*, 262 Neb. 423, 632 N.W.2d 298 (2001).

There was sufficient evidence presented at trial for the district court to find beyond a reasonable doubt that Neal committed second degree forgery. The 2021 quitclaim deed is a written instrument that affects Joyce's legal right to and interest in the Page Drive property. The repeated unorthodox attempts to add Neal's and Londa's names to the property leading up to and around

the date of the offenses show an intent to deceive or harm Joyce by diminishing or eliminating her interest in the property.

Leading up to the date of the offenses, Neal had previously lived in the residence on the Page Drive property, and in 2017, he told Joyce that he and Londa wanted to buy the property using Joyce's name. In actuality, Joyce purchased the property. However, after Joyce and Neal met with Hadenfeldt, Neal's and Londa's names were handwritten on the 2017 quitclaim deed's grantee section in an attempt to suggest that they, too, had an interest in the property. Such was done without Joyce's knowledge or permission.

The 2018 quitclaim deed constituted another effort to demonstrate that Neal and Londa had ownership interests in the property. Joyce admitted to signing this deed, but testified that at the time she signed it, Neal and Londa explicitly told her the document related to her father's estate. Neal's efforts to deceive Joyce culminated with the 2021 quitclaim deed, which is the focus of the offenses litigated in this case. The 2021 deed purports to convey all interest in the Page Drive property to Londa without consideration. This transfer would negate Joyce's interest in the property without her authorization, thus harming Joyce. The three attempts to give Neal and Londa interest in the property were never clearly conveyed to Joyce. Joyce did not recall any conversation regarding adding their names to the 2017 deed. She also testified that Neal and Londa incorrectly described the content of and the purpose of the 2018 deed. And finally, Joyce testified that someone, without her permission, signed her name on the 2021 deed. She explained that the signature was not in her handwriting, and it misspelled her name. Additionally, her printed name on the deed omitted her middle initial, "K.," which she always included on legal documents.

The evidence presented by the State also supported the court's determination that Neal falsely uttered the 2021 quitclaim deed. Hackett testified that the surveillance video showed Neal entering the Register of Deeds Office on the day the deed was filed, 18 minutes before the deed was recorded. Kaufman confirmed in her testimony that Neal was the individual who filed the deed. As explained above, Joyce testified that the signature on the deed purporting to be hers was not, in fact, hers. Preston also testified that she did not notarize the signature purporting to be Joyce's signature. Further, the State provided evidence that Joyce's signature was made without her authority. Hackett testified that Joyce had informed him she had not released her interest in the property, and she had not spoken to Neal or Londa in over a year.

Based on these facts, a factfinder could have found that Neal falsely uttered the 2021 quitclaim deed with the intent to deceive or harm Joyce. Therefore, viewing the evidence in the light most favorable to the State, a factfinder could find the essential elements of the crime of second degree forgery beyond a reasonable doubt.

(b) Abuse of Vulnerable or Senior Adult

Count III of the information alleged that on or about April 23, 2021, Neal committed abuse of a vulnerable or senior adult pursuant to § 28-386. Section 28-386(1) provides, in pertinent part:

> A person commits knowing and intentional abuse, neglect, or exploitation of a vulnerable adult or senior adult if he or she through a knowing and intentional act causes or permits a vulnerable adult or senior adult to be: (a) Physically injured; (b) Unreasonably confined; (c) Sexually abused; (d) Exploited; (e) Cruelly punished; (f) Neglected; or (g) Sexually exploited.

Any person 65 years of age or older is considered a senior adult. Neb. Rev. Stat. § 28-366.01 (Reissue 2016). Neb. Rev. Stat. § 28-358 (Reissue 2016) defines "exploitation" as:

> the wrongful or unauthorized taking, withholding, appropriation, conversion, control, or use of money, funds, securities, assets, or any other property of a vulnerable adult or senior adult by any person by means of undue influence, breach of a fiduciary relationship, deception, extortion, intimidation, force or threat of force, isolation, or any unlawful means or by the breach of a fiduciary duty by the guardian, conservator, agent under a power of attorney, trustee, or any other fiduciary of a vulnerable adult or senior adult.

Financial exploitation is encompassed in the statutory definition of exploitation. See *State v. Vanderford*, 312 Neb. 580, 980 N.W.2d 397 (2022).

Viewing the evidence in the light most favorable to the State, a rational trier of fact could have found all the elements of abuse of a senior adult beyond a reasonable doubt. Joyce was 71 years old when the 2021 quitclaim deed was filed with the Register of Deeds. Thus, she qualified for senior adult status at that time. There was sufficient evidence to demonstrate Neal knowingly and intentionally exploited Joyce. Preston testified that Neal was present with Londa during the notarization of the 2021 quitclaim deed. Therefore, he knew Joyce was not present at the notarization appointment and that her signature was not notarized. Despite this knowledge, Neal recorded the 2021 quitclaim deed with Joyce's forged signature.

In addition, the evidence supported the conclusion that Neal caused or permitted Joyce to be exploited. In 2018, Neal became Joyce's agent under a power of attorney form, and thus owed Joyce fiduciary duties from that point forward. The 2021 quitclaim deed constituted an unauthorized taking of Joyce's interest in the Page Drive property, as she had not signed the deed or released her rights to the property. Neal disregarded his fiduciary duties to Joyce when he recorded the deed and thereafter sought to sell the Page Drive property without Joyce's knowledge. In essence, the evidence demonstrated that Neal was acting to benefit either himself, Londa, or the two of them collectively, by selling property paid for by assets that Joyce was entitled to and keeping the proceeds. Based on this evidence, the court could have found Neal knowingly and intentionally caused or permitted Joyce, a senior adult, to be exploited. Therefore, the court could find all the essential elements of abuse of a senior adult beyond a reasonable doubt.

(c) Attempted Theft

Count IV of the information alleged that Neal committed attempted theft of property valued at more than $5,000 pursuant to § 28-511(2) and Neb. Rev. Stat. § 28-201 (Reissue 2016). Section 28-511(2) states that "[a] person is guilty of theft if he or she transfers immovable property of another or any interest therein with the intent to benefit himself or herself or another not entitled thereto." The criminal attempt statute, § 28-201(1)(b), provides that a person is guilty of an attempt to commit a crime if he or she "[i]ntentionally engages in conduct which, under the circumstances as he or she believes them to be, constitutes a substantial step in a course of conduct intended to culminate in his or her commission of the crime."

On appeal, Neal asserts that the district court erred when it held that Joyce was the sole heir to her father's estate. He argues the court incorrectly relied on Peters' testimony that all assets

of the estate went to Joyce. Neal further argues that Peters was his legal counsel regarding estate matters and that Peters' mischaracterization of the law negates any intent on Neal's behalf to deceive or deprive Joyce of her property. Neal also alleges that Joyce tried to disinherit herself from the estate, and the money used to purchase the Page Drive property was not entirely hers. As such, he asserts that the evidence is insufficient to support a finding of guilt on the charge of attempted theft.

Upon our review of the record, we conclude that there was sufficient evidence presented at trial to find Neal guilty of attempted theft. Based on Hackett's testimony regarding the surveillance video, as well as Kaufman's testimony, the district court could have found that Neal intentionally filed the forged 2021 quitclaim deed with the Register of Deeds. This action was taken in anticipation of selling the Page Drive property. Thus, filing a deed that purports to remove Joyce as an owner constitutes a substantial step in a course of conduct intended to deprive Joyce of her property. Thereafter, a purchase agreement was drawn up with Neal's knowledge that would have completed the planned deprivation.

The estate inheritance and monetary issues raised by Neal on appeal are irrelevant as to Joyce's rights to the Page Drive property. Joyce purchased the property via quitclaim deed in 2017, and since that time has had an ownership interest in the property. The evidence presented at trial supports a finding that Neal attempted to transfer Joyce's property rights to Londa without Joyce's authorization. Therefore, viewing the evidence in the light most favorable to the State, a reasonable fact finder could find all the essential elements of attempted theft beyond a reasonable doubt.

2. EXCESSIVE SENTENCES

Neal argues that the district court abused its discretion by imposing excessive sentences. Specifically, he asserts that neither the protection of the public nor his rehabilitative needs warrant the severe sentences imposed by the district court. He alleges that affirming his sentences would result in a substantial miscarriage of justice. Upon our review, we find no abuse of discretion in the district court's sentencing determinations.

(a) Additional Background

After the verdicts were rendered, a presentence investigation report (PSR) was prepared. At the sentencing hearing, the district court indicated that it had reviewed the PSR and considered all the pertinent factors, including Neal's age, past criminal record, education, motivation for the crime, mentality, and the nature of the crime. The court found that the victim did nothing to cause the crime and that Neal minimized his own involvement while blaming others. The court noted Neal scored high on the Level of Service/Case Management Inventory (LS/CMI) and scored in the maximum risk area in the violence category on the Substance Abuse Questionnaire (SAQ). Additionally, the court reviewed Neal's history of criminal offenses, which includes prior convictions for forgery and attempted abuse of a vulnerable adult, and found at least one of his prior convictions involved fraud. The district court ultimately found that a lesser sentence than imprisonment would depreciate the seriousness of the offenses and promote disrespect for the law. The court also indicated that Neal was at risk of recidivism and that treatment in a correctional setting would benefit him.

(b) Analysis

When imposing a sentence, the sentencing court should customarily consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the offense. *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017). However, the sentencing court is not limited to any mathematically applied set of factors. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

In asserting that his sentences are excessive, Neal does not dispute that his sentences were within the statutory limits. As charged by the State, second degree forgery involving $5,000 or more is a Class IIA felony. § 28-603(2). A Class IIA felony is punishable by up to 20 years' imprisonment. Neb. Rev. Stat. § 28-105 (Reissue 2016). The district court's sentence of 36 to 60 months' imprisonment is clearly within the statutory limits.

Similarly, the district court's sentences of 0 to 36 months' imprisonment for Neal's convictions of abuse of a vulnerable or senior adult and attempted theft, over $5000 are also within the statutory limits. Both offenses are Class IIIA felonies. A Class IIIA felony is punishable by up to 3 years' imprisonment and a $10,000 fine or both the fine and the imprisonment. In this case, post-release supervision does not apply given Neal's conviction of a Class IIA felony as well.

Neal recognizes that his sentences are within the statutory limits. However, he alleges that neither the protection of the public nor his rehabilitative needs warrant the sentences imposed. He asserts that serving his sentences would result in a substantial miscarriage of justice.

At the sentencing hearing in this case, the district court indicated that it had reviewed the PSR and considered all pertinent factors, including Neal's mentality, past criminal record, motivation for the crime, and the nature of the crime. The court found that Joyce did not cause the crime and that Neal failed to take responsibility for his actions. The court noted Neal scored high on the LS/CMI and scored in the maximum risk area on the SAQ's violence category. Additionally, the court reviewed Neal's criminal history and found that these convictions were not his first fraud-type offenses. The district court ultimately found that a lesser sentence would depreciate the seriousness of the offenses and promote disrespect for the law, which would ultimately harm the public. The court also indicated that treatment in a correctional setting would benefit Neal.

Given our review of the record, we find no abuse of discretion by the district court in its sentencing determinations. Neal has numerous prior convictions including assault, strangulation, theft, terroristic threats, and attempted abuse of a vulnerable adult among others. It is significant that even after being convicted of victimizing Joyce previously, he continued to take actions aimed at depriving her of her property. The sentences imposed are well below the combined statutory maximum, particularly if the court had chosen to impose them consecutively. Therefore, no abuse of discretion exists.

VI. CONCLUSION

Upon our review, we affirm Neal's convictions and sentences. There was sufficient evidence presented at trial to support the verdict finding Neal guilty of second degree forgery over

$5,000, abuse of a vulnerable or senior adult, and attempted theft by taking more than $5,000. In addition, the district court did not impose excessive sentences.

AFFIRMED.