IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. DUFFY


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

CODY A. DUFFY, APPELLANT.


Filed December 2, 2025.    No. A-25-438.


Appeal from the District Court for Lancaster County: LORI A. MARET, Judge. Affirmed.

Kristi Egger, Lancaster County Public Defender, and Timothy M. Eppler for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.


RIEDMANN, Chief Judge, and MOORE and WELCH, Judges.

WELCH, Judge.

### INTRODUCTION

Cody A. Duffy appeals from his plea-based conviction of attempted possession of methamphetamine with the intent to deliver in the amount of at least 10 grams but less than 28 grams. On appeal, he contends that the sentence imposed is excessive and that his trial counsel was ineffective in failing to timely consult with him regarding the possible penalties of the State's plea offer, which prevented him from fully comprehending the consequences of a guilty plea and from making a fully informed decision about whether to proceed to trial. For the reasons set forth herein, we affirm.

### STATEMENT OF FACTS

In October 2024, Duffy was charged in Lancaster County District Court with possession of methamphetamine with the intent to distribute in the amount of at least 10 grams but less than 28 grams, a Class ID felony. Pursuant to a plea agreement, Duffy pled guilty to an amended charge

- 1 -

of attempted possession of methamphetamine with the intent to deliver in the amount of at least 10 grams but less than 28 grams, a Class II felony.

The State provided a factual basis stating that at approximately 3:45 a.m. on August 27, 2024, officers on patrol observed a vehicle pass through an intersection with a nonfunctional driver's side headlight. The officers initiated a traffic stop and contacted the driver and the front seat passenger, who was identified as Duffy. After the officer obtained the parties' information and returned to his police cruiser, he noticed that the driver was in the vehicle's back seat and was "moving around items." Officers asked the driver and Duffy to step out of the vehicle for safety reasons. At that time, officers observed a "pipe commonly referred to as a one-hitter," which was in plain view in the driver's side door handle. The pipe was described as "a metal tube style pipe with a small amount of green leafy substance in the end." After this discovery, officers conducted a probable cause search of the vehicle and located a small green bag on the passenger floorboard. Inside the small green bag was a self-sealed baggie with a white crystalline substance that was later confirmed to be 18 grams of methamphetamine. The bag also contained a scoop, which is commonly used to weigh narcotics; a calendar with Duffy's name written inside; and a scale with white crystalline residue on it. After waiving his *Miranda* rights, Duffy admitted that he was on probation for methamphetamine sales, and he admitted to ownership of all of the narcotics-related contents located in the vehicle.

During the sentencing hearing, the court stated that it had reviewed and considered the presentence investigation report (PSR) and an October 2, 2024, substance abuse evaluation of Duffy. In his comments, defense counsel acknowledged that Duffy was on probation at the time that he committed the current offense but noted Duffy's difficult childhood, which included being placed in foster homes. Defense counsel further discussed Duffy's medical issues, including his having been shot, resulting in a brain injury that affects both short-term and long-term memory; his being on medication for night tremors, anxiety, PTSD, and depression; and his having previously attempted suicide. In his allocution, Duffy apologized to the court and stated that he takes "full responsibility for what I am being charged for. I realize and have remorse for the community and people I've put in jeopardy by having hazardous drugs."

Prior to sentencing Duffy, the court stated that it considered the "very generous plea offer" that Duffy received in this case, that Duffy committed the current offense while on probation, that the evidence seized from the vehicle indicated the methamphetamine was Duffy's, that Duffy was selling methamphetamine, and that "[a]ny other excuse or explanation is not credible." The court also noted that Duffy had been assessed as a very high risk to reoffend, and that Duffy failed to take responsibility for his criminal history, some of which predated the shooting that caused Duffy's "supposed traumatic brain injury." The court expressed that Duffy was not a good candidate for probation and that imprisonment was necessary for the protection of the public because the risk was substantial that during any period of probation, Duffy would engage in additional criminal conduct and that a lesser sentence would depreciate the seriousness of Duffy's crime and promote disrespect for the law.

The court sentenced Duffy to 15 to 20 years' imprisonment with the sentence ordered to run consecutively to any other sentence that Duffy was currently serving. The court also granted Duffy credit for 260 days for time served. Duffy has appealed and is represented by different counsel than represented him during his plea and sentencing.

## ASSIGNMENTS OF ERROR

Duffy assigns as error that (1) the sentence imposed is excessive and (2) his trial counsel was ineffective in failing to timely consult with him regarding the possible penalties of the State's plea offer, which prevented him from fully comprehending the consequences of a guilty plea and from making a fully informed decision about whether to proceed to trial.

## STANDARD OF REVIEW

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Alkazahy*, 314 Neb. 406, 990 N.W.2d 740 (2023).

Whether probation or incarceration is ordered is a choice within the discretion of the trial court, whose judgment denying probation will be upheld in the absence of an abuse of discretion. *State v. Senteney*, 307 Neb. 702, 950 N.W.2d 585 (2020).

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Rezac*, 318 Neb. 352, 15 N.W.3d 705 (2025). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## ANALYSIS

### EXCESSIVE SENTENCE

Duffy's first assignment of error is that the district court abused its discretion in imposing an excessive sentence and that a proper sentence was either a term of probation or a lesser term of imprisonment. Specifically, he contends that the district court failed to properly weigh factors, including that Duffy took responsibility for the offense, he demonstrated remorse for exposing the community to hazardous drugs, the adversity he suffered during his adolescence, the progress that he made in earning a GED and completing 2 years of college coursework, his employment history, and his "serious need for support in overcoming his addiction to controlled substances and improving his mental health." Brief for appellant at 16.

Duffy was convicted of attempted possession of methamphetamine with the intent to deliver in the amount of at least 10 grams but less than 28 grams, a Class II felony. See, Neb. Rev. Stat. § 28-201(4)(a) (Reissue 2016) (criminal attempt); Neb. Rev. Stat. § 28-416(10)(c) (Cum. Supp. 2024) (prohibited acts; drugs and narcotics). His sentence of 15 to 20 years' imprisonment is within the statutory sentencing range for Class II felonies, which are punishable by a minimum of 1 year of imprisonment and a maximum of 50 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2024). Duffy's plea agreement benefitted him in that it reduced the offense, which was originally charged as a Class ID felony carrying a mandatory minimum of 3 years' imprisonment, to a Class II felony with no mandatory minimum. See *id*.

It is well established that an appellate court will not disturb sentences within the statutory limits unless the district court abused its discretion in establishing the sentences. *State v. Morton*, 310 Neb. 355, 966 N.W.2d 57 (2021). When sentences imposed within statutory limits are alleged

on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles. *Id*.

The relevant factors for a sentencing judge to consider when imposing a sentence are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id*. The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

Here, although Duffy contends that the district court did not properly consider various factors in imposing his sentence, the district court reviewed the PSR, which included information concerning all of the factors to be considered by a sentencing court. See *State v. Greer*, 309 Neb. 667, 962 N.W.2d 217 (2021). Further, a sentencing court is not required to articulate on the record that it has considered each sentencing factor nor to make specific findings as to the facts pertaining to the factors or the weight given them. *Id*.

According to the PSR, Duffy was 35 years old, divorced, and had one daughter. He earned a GED and attended some college courses. His criminal history included convictions for two counts of theft by taking; and one count each of theft by burglary, shoplifting, theft by deception, criminal trespass, violation of a protection order, and possession of a controlled substance (less than 10 grams). Duffy had previously been sentenced to probation but had probation revoked multiple times. Duffy also has an active warrant out of Colorado related to allegations of assault, obstructing law enforcement, resisting arrest, and making a false report. And in 2019, Duffy was extradited to Iowa regarding charges of "Dominion/Control of Firearm/Offensive Weapon by Felon." The level of service/case management inventory assessed Duffy as a high risk to reoffend.

Duffy admitted to using the following drugs in the past: alcohol, marijuana, methamphetamine, cocaine, heroin, LSD, mushrooms, ecstasy, molly, fentanyl, and steroids. He also described difficulties with his physical health, some of which were due to having been shot in May 2000. Duffy also reported that he had been diagnosed with ADHD, ADD, OCD, manic depression, bipolar II, anxiety, PTSD, agoraphobia, night terrors, and insomnia, and that he tried to kill himself multiple times by using fentanyl. In an October 2024 substance use evaluation, the evaluator diagnosed Duffy with severe methamphetamine use disorder in a controlled environment, severe opioid use disorder in a controlled environment, and moderate cannabis use disorder in early remission.

The probation officer who authored the PSR noted that Duffy "may be engaging in some minimization or denial regarding his substance use." The officer further noted that Duffy's "criminal history and self-report reflects that he has engaged in early and diverse antisocial behavior (documented and self-reported problems of adjustment during adolescence, official record of violence/assault, . . . [and Duffy has had his] probation breached or parole suspended during prior community supervision.)"

Based on factors, including that the sentence imposed is within the statutory sentencing range, the benefit that Duffy received from his plea agreement, his criminal history, his high risk to reoffend, the fact that Duffy was on probation when he committed the current offense, Duffy's

minimization and/or denial regarding his substance use, and the amount of methamphetamine found in his possession, which clearly was too large to be for personal use, the district court did not abuse its discretion in the sentence imposed. For these same reasons, we also find that the district court did not abuse its discretion in declining to sentence Duffy to probation. This assignment of error fails.

INEFFECTIVE ASSISTANCE OF COUNSEL

Duffy's second assigned error is that his trial counsel was ineffective in failing to timely consult with him regarding the possible penalties of the State's plea offer, which prevented him from fully comprehending the consequences of a guilty plea and from making a fully informed decision about whether to proceed to trial.

In *State v. Swartz*, 318 Neb. 553, 566-67, 17 N.W.3d 174, 184-85 (2025), the Nebraska Supreme Court reiterated the propositions of law relative to a defendant's claims of ineffective assistance of counsel made in a direct appeal:

> When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Rezac*[, 318 Neb.] 352, 15 N.W.3d 705 (2025).

> Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*[, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d. 674 (1984)], the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Dat*[, 318 Neb.] 311, 15 N.W.3d 410 (2025). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id*. To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id*.

> An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *Id*.

> Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id*. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.*

Here, Duffy assigns that his trial counsel was ineffective in failing to timely consult with him about the possible penalties of the State's plea offer. He states that when the court asked him during the plea hearing whether he understood the consequences of pleading guilty to the amended

charge, he "stated that 'he thought [the possible penalty] was a one to 20 [year term of imprisonment],' and that he 'didn't know' the possible penalty spanned more than double the length of incarceration indicated to him by his trial counsel." Brief for appellant at 20.

Similar claims were raised in both *State v. Rezac*, 318 Neb. 352, 15 N.W.3d 705 (2025) and *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). In *Rezac*, the defendant argued on direct appeal that his trial counsel was ineffective for failing to "fully explain" the penalties for second degree murder. 318 Neb. at 369, 15 N.W.3d at 719-20. The Nebraska Supreme Court noted that, at the plea hearing, the district court informed the defendant that his offense was punishable by anywhere from 20 years' imprisonment to life imprisonment and the defendant stated that he understood the potential punishment. The defendant also stated that the court had not used any words that he could not understand, he understood the charges and did not have any questions, he understood that the determination of an appropriate sentence was entirely up to the court within statutory limits and stated that he still wanted to plead no contest.

In *Blaha*, the defendant argued on direct appeal that his trial counsel was ineffective in failing to advise him of the statutory sentencing ranges and that counsel had guaranteed a sentence of 12 to 20 years' imprisonment. The Nebraska Supreme Court "found that the record 'show[ed] otherwise.'" *Id.* at 424, 929 N.W.2d at 502. The Court noted that the record showed that, during the plea hearing, the court informed the defendant that the maximum possible sentence for each offense was 50 years' imprisonment; that the defendant denied that anyone had made any promises to him in exchange for his pleas beyond the plea agreement; and the defendant confirmed that he understood that the court alone would decide his sentences. The court found that the record affirmatively refuted the defendant's claim that he was not advised of the statutory sentencing ranges and was promised 12 to 20 years' imprisonment

In the instant case, at the start of the plea hearing, Duffy was arraigned on the amended charge of attempted possession of methamphetamine with the intent to deliver in the amount of at least 10 grams and less than 28 grams, which was a Class II felony punishable by 1 to 50 years' imprisonment. Duffy responded affirmatively to the court's question of whether Duffy understood the charge and the possible penalty. However, he then stated that "I thought it was a one to 20 [years' imprisonment]. But, well I was under that impression. But I didn't know." The court then asked if Duffy wanted additional time to speak with defense counsel, which Duffy declined. The plea hearing continued with the court advising Duffy of his rights, after which the following colloquy occurred between the court and Duffy:

> THE COURT: As [the prosecutor] told you previously, should you be convicted of the charge in the amended information, it's a [C]lass II felony, punishable by one to 50 years['] incarceration. Do you understand that?
> [Duffy:] I can get anywhere from one year to 50 years?
> THE COURT: Correct.
> [Duffy:] Yes, ma'am.

Later, during the hearing, the colloquy continued:

> THE COURT: . . . Duffy, have you discussed these plea proceedings that we're conducting here today with your lawyer?
> [Duffy:] Yes, Your Honor.

THE COURT: Did he explain this charge to you together with the rights that we've been discussing?

[Duffy:] Yes, ma'am.

THE COURT: Did he also discuss with you all of the possible defenses to this charge with you all of the possible defenses to this charge that you might have if you were to have a trial?

[Duffy:] Yes, ma'am.

THE COURT: Are there any defenses that you feel that you may have, or any facts about your case that you think might be helpful to your defense that you've not already discussed with your lawyer?

[Duffy:] No, ma'am.

THE COURT: In fact, have you told him everything that you know about your case so that he can represent you properly?

[Duffy:] Yes, ma'am.

THE COURT: Are you satisfied with the job that he's done as your attorney?

[Duffy:] Yes, ma'am.

THE COURT: Do you feel he's a competent lawyer, he knows what he's doing?

[Duffy:] He is.

THE COURT: Have you had enough time to talk with him about your case?

[Duffy:] Yes, Your Honor.

Here, during Duffy's colloquy with the court during the plea hearing, after Duffy questioned the statutory sentencing range, the court offered Duffy additional time to speak to his attorney, which Duffy declined; later in the hearing, the court again advised Duffy that he could be sentenced between 1 and 50 years' imprisonment, to which Duffy responded that he understood; and even later during the hearing, Duffy acknowledged in the affirmative that he had a sufficient amount of time to talk with defense counsel about his case. As the Nebraska Supreme Court held in *State v. Vanderpool*, 286 Neb. 111, 835 N.W.2d 52 (2013), when allegations of ineffective assistance of counsel are affirmatively refuted by a defendant's assurances to the sentencing court, there is no basis for relief. In this holding, the court cited to a prior opinion where it had stated:

> If the dialogue which is required between the court and the defendant . . . all done during the sanctity of a full and formal court proceeding, is to be impugned by a mere recantation made after the doors of the prison clang shut, we are wasting our time and that of the trial judges, making a mockery out of the arraignment process.

*Id.* at 118-19, 835 N.W.2d at 58 (citing *State v. Scholl*, 227 Neb. 572, 419 N.W.2d 137 (1988)).

Because the record on direct appeal affirmatively establishes that Duffy cannot establish prejudice from his trial counsel's alleged failure to properly consult with him regarding the possible penalties related to the State's plea offer, this assignment of error fails and is not preserved for postconviction review.

- 7 -

## CONCLUSION

Having considered and rejected Duffy's claims of the imposition of an excessive sentence and that his trial counsel was ineffective in failing to timely consult with him regarding the possible penalties of the State's plea offer, which prevented him from fully comprehending the consequences of a guilty plea and from making a fully informed decision about whether to proceed to trial, we affirm Duffy's conviction and sentence.

AFFIRMED.